FILED
2019 Feb-13  AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAYME DAVIDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHSPSC, LLC d/b/a/** | ) | |
| **GRANDVIEW MEDICAL** | ) | **JURY DEMAND** |
| **CENTER,** | ) | **ENDORSED HEREON** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now Plaintiff Jayme Davidson ("Davidson" or "Plaintiff"), and states and pleads the following in support of her complaint against Defendant CHSPSC, LLC d/b/a Grandview Medical Center ("Grandview" or "Defendant"):

## JURISDICTION AND VENUE

1.     This is a suit for violations of the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA") and the Family Medical Leave Act  (the "FMLA").

2.     The jurisdiction of this Court is invoked due to the federal questions at issue under 28 U.S.C. § 1331.

3.     Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) as the acts giving rise to the claims alleged herein occurred within this district.

4.     At all relevant times, Defendant Grandview has been a covered entity under Section 101(2) of the Americans with Disabilities Act, 42 U.S.C.A. § 12111(5)(A).

5.     Davidson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 26, 2018  (attached as Exhibit A).  On or about November 12, 2018, the EEOC issued a Notice of Suit Rights (attached as Exhibit B).

## PARTIES

6.     Davidson is a citizen of the United States over the age of nineteen (19) and is a resident of Jefferson County in the State of Alabama.

7.     Davidson was an employee of Grandview and worked at its hospital located in Birmingham, Alabama.

8.     Davidson was at all times relevant hereto an "employee" residing in Alabama.

9.     Davidson worked in excess of 1250 hours for Defendant in the year preceding her discharge.

10.     Defendant Grandview is a Tennessee limited liability company licensed to do business in the State of Alabama.

11.     At the time of Plaintiff's termination, Grandview employed over 500 employees, at least 50 of which worked within a 75-mile radius of the location where Plaintiff worked during her employment.

## FACTUAL ALLEGATIONS

12.     Davidson began working for Baptist Health System in their Home Health Department as Home Health Social Worker on August 4, 1997.

13.     In December 2004, Davidson transferred to Baptist Medical Center Montclair as Social Worker. She continued working as Social Worker when the hospital name changed to Trinity Hospital and later Grandview Medical Center.

14.     In 2007, Grandview promoted Davidson to Lead Social Worker.

15.     In Davidson's capacity as Lead Social Worker, she was responsible for case management, assessments, and discharge planning.

16.     At Grandview, Davidson typically was responsible for 70 patients at a given time.

17.     In Davidson's twenty years as Social Worker, she always had excellent performance reviews.

18.     Davidson's performance review in 2016 was the best performance review she had ever received.

19.     Davidson is partially deaf and has a 35% hearing loss in both ears, which is a qualified disability under the ADAAA.

20.     Davidson's hearing impairment substantially limited her in multiple major life activities, including but not limited to, the major life activities of hearing and communicating.

21.     Davidson's hearing impairment also is a serious health condition as defined by the FMLA.

22.     Because of her hearing disability, Davidson often had trouble hearing during in-person meetings and telephone conversations with other staff members, doctors, patients, and patient-family members, which could lead to misinterpretations on her part and/or the part of others.

23.     On more than one occasion in 2015 through 2017, Davidson requested that Grandview accommodate her disability by providing hearing aids and Grandview refused to provide such an accommodation.

24.     Davidson told HR manager Jeri Wink and CFO Julie Seakoro that she had spoken with an attorney about Grandview's refusal to provide this accommodation and Jeri Wink told her she could save money by purchasing hearing aids rather than spend money consulting with an attorney.

25.     Davidson communicated on several occasions to Wink and her supervisor Cynthia Watson that she believed that she was being harassed and subjected to a hostile work environment because of her hearing disability but they

did not address these issues and they continued to refuse to provide the accommodation of hearing aids.

26.   In or around July and August of 2016, Davidson contracted Clostridioides Difficile Infection ("C-Difficile") in the workplace.

27.   Dr. White at Grandview wrote Davidson a prescription for her C-Difficile symptoms on August 21, 2016.

28.   The week of August 22, 2016 Davidson specifically notified Watson that she had C-Difficile symptoms and had been given a prescription for her symptoms.  Davidson continued to work for Grandview.

29.   In September of 2016, Davidson was hospitalized at Grandview due to the C-Difficile.  Shortly thereafter, a Grandview physician recommended Davidson take a two-week leave of absence due to the C-Difficile. Davidson, through her husband, sent the appropriate FMLA paperwork to Grandview.

30.   While Davidson's supervisor, Watson, allowed Davidson to take leave, she at the same time told Davidson that she need to return to work as soon as possible because the hospital was short-staffed.

31.   Because Davidson was discouraged from taking an extended leave of absence, she had over four reoccurrences of C-Difficile and lost over 50 pounds over a nine-month period.

32.   Davidson was out of work due to C-Difficile from September 6, 2016

through September 18, 2016; October 20, 2016 through November 2, 2016; November 14, 2016 through November 27, 2016; and December 14, 2016 through January 12, 2017.

33.     Davidson filled out the appropriate FMLA paperwork for the leave she had to take due to complications from the C-Difficile.

34.     During this time, Watson repeatedly encouraged Davidson to look for another job.

35.     When Davidson took leave for her fourth reoccurrence of C-Difficile, Watson warned her that if she got sick again, she would not have a job.

36.     Davidson's absences were protected by the FMLA and the ADA.

37.     Davidson requested worker's compensation coverage since she had contracted C-Difficile in the workplace, but her claim was denied.

38.     Prior to her leave, Davidson had signed up to work some extra shifts. Upon returning from leave, Watson took away these extra shifts and gave them to other, non-disabled social workers. When Davidson asked if it was due to the C-Difficile, she received no response and never again was allowed to work an extra shift.

39.     Davidson continues to experience complications from C-Difficile.

40.     C-Difficile is a qualified disability under the ADAA.

41.     Defendant perceived Davidson as suffering from a disability due to her C-Difficile.

42.     Defendant had a record of Davidson suffering from a disability due to her C-Difficile.

43.     Davidson's recurrent C-Difficile has substantially limited her in multiple major life activities, including but not limited to, the major life activities of thinking, concentrating, sleeping, eating and working.

44.     Davidson's recurrent C-Difficile also is a serious health condition as defined by the FMLA.

45.     On March 1, 2017, Davidson slipped on a wet floor at work, fell, broke her ankle, and had major complications due to the failure of the Defendant to provide immediate medical treatment.

46.     Davidson had ankle surgery in May 2017 which required a six week recovery and leave from work. While this leave was covered under worker's compensation, Davidson also submitted to Grandview the appropriate FMLA paperwork for this leave of absence. However, her FMLA request was denied.

47.     When Davidson returned to work after her ankle surgery, all of her belongings were packed up and she was moved to the ninth floor of the hospital which had a known higher volume of patients with C-Difficile.

48.     Davidson had repeatedly requested, in accordance with a note and prohibition from her doctor, that she not be in rooms with patients with possible C-Difficile due to the fact that additional exposure to this infection at work would likely cause her further illness.   Despite Davidson's request for this accommodation, Grandview failed to offer this accommodation and Davidson was assigned to the ninth floor, which was known to have a higher volume of patients with C-difficile than other floors of the hospital.

49.     Davidson's ankle did not heal properly and it required another surgery in September 2017.

50.     Davidson's ankle impairment substantially limited her in multiple major life activities, including but not limited to, the major life activities of walking, sleeping, and working.

51.     Because of her ankle impairment, Davidson was a qualified individual with a disability under the ADAAA.

52.     Defendant perceived Davidson as suffering from a disability due to her ankle impairment.

53.     Defendant had a record of Davidson suffering from a disability due to her ankle impairment.

54.     Davidson's ankle impairment also is a serious health condition as defined by the FMLA.

55.     Davidson was told by a Human Resources representative that she had to return to work on October 24, 2017 or she would lose her job.

56.     Davidson returned to work on October 24, 2017 and she was terminated from employment by Grandview five days later, on October 30, 2017.

57.     On October 27, 2017, three days before Davidson was terminated, Case Manager Teresa Blocker asked Davidson to look up Blocker's personal test results on the hospital electronic medical records. Davidson refused to do so because that would be a violation of company policy and a terminable offense, as well as a HIPAA violation. Davidson believed she was being set up to commit such a violation so that Grandview would have cause to terminate her and a co-worker confirmed this was true.

58.     On information and belief, Davidson was replaced by a non-disabled employee.

59.     Prior to her requests for accommodation and her leaves of absence, Davidson had never been disciplined or written up. After her requests for accommodation and her leaves of absence, Davidson was subjected to greater scrutiny by her supervisor and co-workers and written up on at least two occasions and given a warning on one occasion.

60.     For example, Davidson was written up for not having a "Patient Choice Form" signed on a patient and treated differently than other, non-disabled social

workers who made the same and very common error (which Davidson had seen on past audits of Patient Choice Forms).

61.    Davidson also was written up because a family allegedly complained about her services, but she was never written up for any family complaints in the past.

62.    When Davidson was terminated on October 30, 2017, she was never given any reason orally or in writing for being terminated.

63.    The reasons given by Grandview for Davidson's discipline and termination are false and pretextual.

64.    Furthermore, at no point did Grandview engage in the interactive process with Davidson about her request for accommodations, including her request for hearing aids for her hearing disability, her request to not have to work in direct contact with patients with a high likelihood of C-Difficile, and her requests for leave for the C-Difficile.  Grandview also failed to properly engage in the interactive process with Davidson regarding her requests for leave for her ankle impairment.

65.    By terminating her employment, Grandview discriminated against Davidson and retaliated against her because of disabilities and her protected activity (requests for accommodation and reports of harassment because of her disability).

66.    Grandview terminated Davidson in violation of the FMLA and the ADAAA.

## COUNT I. FMLA INTERFERENCE

67.     Davidson realleges and readopts the allegations of paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.     At all times relevant to the facts alleged in this Complaint, Davidson suffered from one or more serious health conditions pursuant to the FMLA.

69.     Davidson exercised her FMLA rights and Defendant interfered with her rights under the FMLA in violation of 29 U.S.C. §§ 2614(a)(1)(A) and 2615(a)(1) and 2615(a)(2).

70.     Defendant's actions were willful and done with malice.

71.     Davidson was injured due to Defendant's violations of the FMLA, to which Davidson is entitled to legal and injunctive relief.

WHEREFORE, Davidson demands:

(a) The court enter a judgment that Defendant interfered with Davidson's rights in violation of the FMLA;

(b) An injunction restraining continued violation of the FMLA;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Enter a judgment pursuant to 29 U.S.C.A. § 2617(a)(1)(A) against Defendant and in favor of Davidson for the monetary losses Davidson suffered as a direct result of Defendant's violation of the FMLA;

(e) Front pay;

(f) Liquidated Damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims;

(i) Such further relief as the Court deems just and equitable.

## COUNT II. FMLA RETALIATION

72.     Davidson realleges and readopts the allegations set forth in Paragraphs 1 through 71 of this Complaint as though fully set forth herein.

73.     At all times relevant to the facts alleged in this Complaint, Plaintiff suffered from one or more serious health conditions pursuant to the FMLA.

74.     Davidson exercised her FMLA rights by requesting and taking FMLA leave.

75.     Although Davidson was approved for taking FMLA leave on four occasions (and denied FMLA leave on one occasion), she was disciplined and ultimately terminated after she returned from leave.

76.     Defendant retaliated against Davidson for exercising her FMLA rights.

77.     Defendant's actions were willful and done with malice.

78.     Davidson was injured due to Defendant's violations of the FMLA, to which Davidson is entitled to legal and injunctive relief.

WHEREFORE, Plaintiff demands:

(a) The court enter a judgment that Defendant retaliated against Davidson in violation of the FMLA;

(b) An injunction restraining continued violation of the FMLA;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Enter a judgment pursuant to 29 U.S.C.A. § 2617(a)(1)(A) against Defendant and in favor of Davidson for the monetary losses Davidson suffered as a direct result of Defendant's violation of the FMLA;

(e) Front pay;

(f) Liquidated Damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims;

(i) Such further relief as the Court deems just and equitable.

## COUNT III FAILURE TO ACCOMMODATE

79.    Davidson realleges and readopts the allegations set forth in Paragraphs 1 through 78 of the Complaint as though fully set forth herein.

80.    Davidson is a person with disabilities as defined by the ADAAA.

81.    Defendant was aware of and had notice of Davidson's disabilities.

82.    Davidson requested reasonable accommodations and so that she could perform the essential functions of her job.

83.    Defendant failed to accommodate Davidson's requests for hearing aids.

84.     Defendant failed to accommodate Davidson's request, in accordance with a note and prohibition from her doctor, that she not be in contact with floors and patients that had a high likelihood of C-difficile.  Despite Davidson's request for this accommodation, Davidson was assigned to the ninth floor which was known to have a higher volume of patients with C-difficile than other floors of the hospital.

85.     Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

86.     As a result of Defendant's discriminatory conduct, Davidson suffered and continues to suffer damages.

87.     As a proximate result of Defendant's unlawful and intentional discriminatory actions against Davidson, as alleged above, Davidson has been harmed in that Davidson has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Davidson has suffered such damages in an amount according to proof.

WHEREFORE, Davidson prays for judgment as follows:

(a)     For backpay, with prejudgment interest;

(b)     For front pay and/or future lost earnings, for the period from the date of judgment to the date of her reinstatement;

(c)     For compensatory damages according to proof;

(d)     For punitive damages in an amount appropriate to punish

Defendant and deter others from engaging in similar misconduct;

(e)     For costs of suit, including reasonable attorneys' fees and

expert fees; and

For such other and further relief as the court deems proper.

## COUNT IV DISCRIMINATORY DISCIPLINE AND TERMINATION ON THE BASIS OF A DISABILITY

88.     Plaintiff realleges and readopts the allegations set forth in Paragraphs 1 through 87 of this Complaint as though fully set forth herein.

89.     Defendant intentionally discriminated against Davidson because of Davidson's disabilities, by disciplining Davidson and ultimately terminating Davidson because of her disabilities.

90.     Defendant perceived Davidson to have disabilities and intentionally discriminated against Davidson because of Davidson's perceived disabilities, by terminating Davidson because of her perceived disabilities.

91.     Defendant had a record of Davidson having disabilities and intentionally discriminated against Davidson because of this record of her disabilities when it terminated her.

92.     Upon information and belief, Davidson was replaced by a non-disabled employee.

93.    The discriminatory action of Defendant as set forth herein, has caused and will continue to cause Davidson to suffer losses of earnings, from the date of her termination until the date on which Davidson is re-hired by Defendant, or finds substantially equivalent employment.

94.    As a further proximate result of Defendant's unlawful and intentional discriminatory actions against Davidson, as alleged above, Davidson has been harmed in that Davidson has suffered the intangible loss of such employment-related opportunities and experience in the position from which Davidson was terminated. As a result of such discrimination and consequent harm, Davidson has suffered such damages in an amount according to proof.

95.    As a further proximate result of Defendant's unlawful and intentional discriminatory actions against Davidson, as alleged above, Davidson has been harmed in that Davidson has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Davidson has suffered such damages in an amount according to proof.

WHEREFORE, Davidson prays for judgment as follows:

(a)    For backpay, with prejudgment interest;

(b)    For front pay and/or future lost earnings, for the period from the date of judgment to the date of her reinstatement;

(c)     For compensatory damages according to proof;

(d)     For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in similar misconduct;

(e)     For costs of suit, including reasonable attorneys' fees and expert fees; and

(f)     For such other and further relief as the court deems proper.

## COUNT V ADAAA RETALIATION

96.     Davidson realleges and readopts the allegations set forth in Paragraphs 1 through 95 of this Complaint as though fully set forth herein.

97.     As detailed in the above Paragraphs, Davidson suffered retaliatory discipline and termination on the basis of her disability.  Davidson engaged in protected activity by requesting workplace accommodations, including, but not limited to, her requests for hearing aids, her requests for leave from work, and her requests to not have to work in direct contact with patients with a high likelihood of C-Difficile.  Davidson engaged in protective activity when she complained to HR of harassment based on her disability. Shortly after these requests, Davidson was disciplined and terminated. Any reasons offered by Defendant for the discipline and termination was pretext for retaliation.

98.     The discriminatory action of Defendant as set forth herein, has caused and will continue to cause Davidson to suffer losses of earnings, from the date of her

termination until the date on which Davidson is re-hired by Defendant, or finds substantially equivalent employment.

99.    As a further proximate result of Defendant's unlawful and intentional retaliatory actions against Davidson, as alleged above, Davidson has been harmed in that Davidson has suffered the intangible loss of such employment-related opportunities as experience in the position from which Davidson was terminated. As a result of such discrimination and consequent harm, Davidson has suffered such damages in an amount according to proof.

100.   As a further proximate result of Defendant's unlawful and intentional retaliatory actions against Davidson, as alleged above, Davidson has been harmed in that Davidson has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Davidson has suffered such damages in an amount according to proof.

WHEREFORE, Davidson prays for judgment as follows:

(a)    For backpay, with prejudgment interest;

(b)    For front pay and/or future lost earnings, for the period from the date of judgment to the date of her reinstatement;

(c)    For compensatory damages according to proof;

(d)     For punitive damages in an amount appropriate to punish

Defendant and deter others from engaging in similar misconduct;

(e)     For costs of suit, including reasonable attorneys' fees and

expert fees; and

(f)     For such other and further relief as the court deems proper.


Respectfully Submitted this 12th day of February 2019.


/s/ Susan N. Han
One of the Counsel for
Plaintiff Jayme Davidson

**OF COUNSEL:**

Susan N. Han
NETTLES HAN LAW, LLC
2100 First Avenue North, Suite 600
Birmingham, Alabama 35203
Telephone: (205) 383-2296
E-mail: susan@nettleshanlaw.com

Brandy Lee
LEE LAW FIRM, LLC
403 Ninth Avenue
Jasper, Alabama 35501

2100 First Avenue North
Suite 600
Birmingham, Alabama 35203
Telephone: (205) 328-9445 Ext 405
E-mail: brandy@leelawfirmllc.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THIS CAUSE.**

/s/ Susan N. Han
Of Counsel

**PLEASE SERVE THE FOLLOWING DEFENDANT BY CERTIFIED MAIL:**
CT Corporation System
Registered Agent for
Grandview Medical Center
300 Montvue Road
Knoxville, TN  37919-5546